J-S78045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 6**5.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JERROLD SISCO | |
| Appellant | No. 987 WDA 2016 |

Appeal from the PCRA Order June 28, 2016
in the Court of Common Pleas of Jefferson County Criminal Division
at No(s): CP-33-CR-0000402-2012

BEFORE: BENDER, P.J.E., OTT, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MAY 26, 2017**

Appellant, Jerrold Sisco, appeals from the order entered in the Jefferson County Court of Common Pleas denying, after an evidentiary hearing, his first Post Conviction Relief Act[1] ("PCRA") petition. This case returns to us after we remanded to have counsel comply with all of the requirements of **Turner**/**Finley**,[2] including filing a petition to withdraw with this Court. Appellant's counsel has substantially complied. We grant counsel's petition to withdraw and affirm the order below.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On December 19, 2012, Appellant entered a guilty plea to one count of involuntary deviate sexual intercourse[3] ("IDSI") with a two year old child. On March 20, 2013, Appellant was sentenced to ten to thirty years' incarceration; however, the court did not find Appellant to be a sexually violent predator. Appellant did not file post-sentence motions or a direct appeal to this Court. On July 12, 2013, Appellant filed a *pro se* motion for discovery and to produce transcripts.

The PCRA court summarized the procedural posture of this case as follows:

> When [Appellant] filed a document specifically requesting PCRA relief on December 16, 2015, the [c]ourt treated it as an amendment to the unanswered Motion for Discovery and to Produce Transcripts he had filed on July 12, 2013, which was well within the PCRA's statute of limitations. PCRA counsel filed an additional amendment on March 10, 2016, and the [c]ourt convened a hearing on May 31, 2016, to entertain [Appellant's] ineffective assistance of counsel claims.

PCRA Ct. Op., 6/28/16, at 1. The PCRA court denied Appellant's petition on June 28, 2016. This timely appeal followed.

Appellant's counsel filed a petition to withdraw representation pursuant to **Anders v. California**, 386 U.S. 738 (1967). We directed counsel to comply with the **Turner**/**Finley** requirements and denied the petition to withdraw without prejudice. **Commonwealth v. Sisco**, 987 WDA 2016 (unpublished memorandum at 3) (Pa. Super. Oct. 28, 2016). Counsel filed a

---

[3] 18 Pa.C.S. § 3123(b).

- 2 -

***Turner*/*Finley*** brief and a petition to withdraw.  Appellant did not file a *pro se* response.[4]

Appellant's counsel identifies the following issues on appeal:

1. Was trial counsel ineffective for failing to file requested post-sentence motions and a direct appeal from the judgment of sentence?

2. Was [Appellant] coerced into pleading guilty by threat of abandonment by his trial counsel?

3. Was trial counsel ineffective for failing to discuss with [Appellant] the "Simeon statement" and the "Hill letter"?

***Turner*/*Finley*** Brief at 4.

Prior to addressing the issues raised in the ***Turner*/*Finley*** brief, we examine the following in evaluating counsel's petition to withdraw:

[I]ndependent review of the record by competent counsel is required before withdrawal is permitted.  Such independent review requires proof of:

1) A "no-merit" letter by PCRA counsel detailing the nature and extent of his review;

2) The "no-merit" letter by PCRA counsel listing each issue the petitioner wished to have reviewed;

3) The PCRA counsel's "explanation", in the "no-merit" letter, of why the petitioner's issues were meritless;

4) The PCRA court conducting its own independent review of the record; and

5) The PCRA court agreeing with counsel that the petition was meritless.

_____

[4] We note the Commonwealth did not file a brief.

- 3 -

***Commonwealth v. Widgins***, 29 A.3d 816, 817–18 (Pa. Super. 2011)

(citations and alterations omitted).

> Further, the ***Widgins*** Court explained:

> > The Supreme Court [in ***Commonwealth v. Pitts***, 981 A.2d 875 (Pa. 2009),] did not expressly overrule the additional requirement imposed by [***Commonwealth v. Friend***, 896 A.2d 607 (Pa. Super. 2006),] decision, *i.e.*, that PCRA counsel seeking to withdraw contemporaneously forward to the petitioner a copy of the application to withdraw that includes (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed *pro se*, or with the assistance of privately retained counsel.

***Id.*** at 818 (citations omitted). Instantly, we have reviewed counsel's petition to withdraw and conclude it substantially[5] complies with the requirements set forth by the ***Widgins*** Court. ***See id.*** Accordingly, "[w]e now turn to an independent review of [Appellant's] PCRA Petition to ascertain whether his claim entitles him to relief." ***Id.*** at 819.

First, Appellant contends trial counsel was ineffective for failing to file requested post-sentence motions and a direct appeal. He avers that on the day he was sentenced he asked counsel "what more is there to do, what motions" and "what more can we do." ***Turner***/***Finley*** Brief at 14.

---

[5] Counsel's petition failed to advise Appellant explicitly about the nature and extent of his review. ***See Widgins***, 29 A.3d at 817-18. However, counsel's ***Turner***/***Finley*** brief contained a statement of the matters reviewed and his discussion of Appellant's issues evidences a review of the record. ***See id.***

- 4 -

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." ***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1267 (Pa. 2008) (citation omitted). "Furthermore, we note that we are bound by the PCRA court's credibility determinations where there is record support for those determinations." ***Commonwealth v. Santiago***, 855 A.2d 682, 694 (Pa. 2004) (citation omitted).

With respect to claims of counsel's ineffectiveness,

> [C]ounsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

***Commonwealth v. Perry***, 959 A.2d 932, 936 (Pa. Super. 2008) (punctuation and citations omitted).

In determining whether counsel's action was reasonable, the court does not consider "whether there were other more logical courses of action" counsel could have pursued, but simply examines whether counsel's decision had any reasonable basis. ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007). Conversely, to merit relief, counsel's action, given all the

other available alternatives, must be "so unreasonable that no competent lawyer would have chosen it." **Commonwealth v. Miller**, 431 A.2d 233, 234 (Pa. 1981) (citation omitted).

> Our Supreme Court has held that counsel's unexplained failure to file a requested direct appeal constitutes ineffective assistance *per se*, such that the petitioner is entitled to reinstatement of direct appeal rights *nunc pro tunc* without establishing prejudice. **Commonwealth v. Lantzy**, [ ] 736 A.2d 564, 572 ([Pa.] 1999). However, before a court will find ineffectiveness of counsel for failing to file a direct appeal, the petitioner must prove that he requested a direct appeal and the counsel disregarded the request. **Commonwealth v. Bath**, 907 A.2d 619 (Pa. Super. 2006). Here, [the a]ppellant has not alleged on appeal that he requested guilty plea/sentencing counsel to file a direct appeal and counsel failed to do so. Rather, [the a]ppellant contends that guilty plea/sentencing counsel was ineffective in failing to consult with [him] as to whether he desired to file a direct appeal . . . .
>
> With regard to counsel's duty to consult, this Court has held as follows:
>
>> [Case law] impose[s] a duty on counsel to adequately consult with the defendant as to the advantages and disadvantages of an appeal where there is reason to think that a defendant would want to appeal. The failure to consult may excuse the defendant from the obligation to request an appeal . . . such that counsel could still be found to be ineffective in not filing an appeal even where appellant did not request the appeal.
>
> [ ]
>
>> [C]ounsel has a constitutional duty to consult with a defendant about an appeal where counsel has reason to believe either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this

> particular defendant reasonably demonstrated to counsel that he was interested in appealing.

***Commonwealth v. Ousley***, 21 A.3d 1238, 1244–45 (Pa. Super. 2011) (some citations omitted).

The PCRA court opined as follows:

> Having agreed to the plea deal reflected in his written plea colloquy, [Appellant] knew going into the courtroom on March 20, 2013 that he would be receiving a sentence of 10-30 years in prison. As he indicated on the date he entered his guilty plea, moreover, he understood that ten years was the mandatory minimum and that his negotiated maximum was ten years less than the statutory maximum. He also knew, of course, that he could anticipate a multiplied sentence if the Commonwealth added the other twenty-one counts and proved him guilty at trial. While [Appellant] may not have been eager to spend the next ten years of his life in prison, therefore, the [c]ourt does not believe that he inquired, even vaguely, about his appeal options.
>
> *          *          *
>
> He knew on the date he was sentenced that the [c]ourt would be imposing the agreed-upon 10-30 years, that it was the best deal the Commonwealth would offer, and that rejecting it would engender a trial and all the risks he had consciously chosen to avoid by taking the plea deal. It thus defies reason to believe that [Appellant] suddenly wanted to upset the balance by taking an immediate appeal, and [counsel] cannot be deemed ineffective for not taking a groundless appeal his client never even requested.

PCRA Ct. Op. at 2-4.[6]  We agree no relief is due.

---

[6] We note that at sentencing, the following exchange took place between Appellant and the court:

At the PCRA evidentiary hearing, Appellant testified, *inter alia*, as follows:

> [Appellant's PCRA Counsel]: . . . You also have an allegation that you asked [trial counsel] to file post sentence motions after you were sentenced?
>
> A: Yeah. I asked him what more is there to do, what motions.
>
> Q: When did you ask him that?
>
> A: Right after my sentencing.
>
> Q: Same day?
>
> A: Yes.
>
> Q: What was his response, if any, did he give you?
>
> A: He just said, "Good luck."
>
> Q: Was this just a verbal request?

---

> The Court: . . . You've been sentenced. Do you have any questions?
>
> [Appellant]: No, Your Honor.
>
> The Court: From today's date, you have 10 days to file post-sentence motions. That would allow me to take a second look at your case. If I were to deny those motions, you have 30 days to appeal that denial to Superior Court, or you can take a separate avenue and file a direct appeal to Superior Court 30 days from today's date. Do you understand your post-sentence and appeal rights?
>
> [Appellant]: Yes, Your Honor.

N.T. Sentencing Hr'g, 3/20/13, at 7.

- 8 -

A: Yes.

Q: Was there anything in writing that you gave to him?

A: No. It was all verbal. That day, after sentencing, I asked him if there was anything else we can do. Something. Like a recommendation. Well, sentence reconsideration or something. He said, "Good luck."

Q: You also have an allegation that you requested [trial counsel] to file a direct appeal. Can you tell us about that?

A: That is after sentencing when I was asking him what more can we do.

Q: Okay. It was just a general question?

A: Yeah.

Q: Not, hey, [counsel], file this, file that, file an appeal?

A: I don't know the law. All I was asking is what more can we do.

Q: And that conversation, did it take place in the courtroom?

A: Outside of the courtroom, right after I got sentenced.

Q: In the courthouse?

A: Yeah.

N.T. PCRA Hr'g, 5/31/16, at 25-26.

Trial counsel testified at the PCRA hearing as follows:

[Appellant's PCRA counsel]: Now, [Appellant] also made [sic] allegation here that he asked you to file post-sentence motions and/or a direct appeal?

A: He did not. He knew exactly what was coming. He didn't come into court and didn't know—oh, my God, I'm

shocked. He knew what the plea was and the sentence, and he knew about the plea bargain. So, no, it wasn't—

Q: And he indicated on the witness stand, [Appellant], that on March 20, 2013, the date of the sentencing, that either just outside of the courtroom, but inside of the courthouse somewhere, he asked about this, and you said something to the effect, well, if you're thinking about filing motions or an appeal, good luck with that?

A: No. Usually, if I'm hearing someone sentenced, I say good luck. But, no. Again, he knew what he was getting, so I don't know why he was so shocked. He agreed to that.

Q: But it's your testimony that [Appellant] never asked you directly or indirectly to file post-sentence motions?

A: No

Q: He never asked you directly or indirectly to file an appeal?

A: No.

Q: Did he ever ask you, "What is there that you can do more for me," after he was sentenced?

A: No.

*Id.* at 37-38.

[The Commonwealth]: It's your testimony that [Appellant] never advised you that he wanted you to file a post-sentence motion or an appeal from his judgment of sentence?

A: No, he never did.

*Id.* at 44.

In the case *sub judice*, Appellant has not proven that he requested a direct appeal and that counsel ignored the request; therefore, counsel was

not *per se* ineffective. ***See Ousley***, 21 A.3d at 1244. Furthermore, the record does not support a finding that there are nonfrivolous grounds for appeal. Consequently, counsel cannot be deemed ineffective in not consulting with Appellant regarding the filing of an appeal even if Appellant did not request an appeal. ***See id.*** at 1244-45; ***Perry***, 959 A.2d at 936. The PCRA court found counsel's testimony to be credible. ***See Santiago***, 855 A.2d at 694. We find the PCRA court's findings are supported by the record and free of legal error. ***See Abu—Jamal***, 941 A.2d at 1267.

Next, Appellant contends counsel coerced him into taking the guilty plea rather than go to trial. Appellant avers that when he told counsel he was contemplating going to trial, counsel indicated that if he did not have the money to pay for the trial fee, counsel would withdraw. Appellant felt abandoned.

In ***Commonwealth v. Rathfon***, 899 A.2d 365 (Pa. Super. 2006), this court opined:

> "A criminal defendant has the right to effective counsel during a plea process as well as during trial." [***Commonwealth v. Hickman***, 799 A.2d 136, 141 (Pa. Super. 2002).] "A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance of counsel caused the defendant to enter an involuntary plea of guilty." ***Commonwealth v. Kersteter***, 877 A.2d 466, 468 (Pa. Super. 2005).
>
> We conduct our review of such a claim in accordance with the three-pronged ineffectiveness test under section 9543(a)(2)(ii) of the PCRA, 42 Pa.C.S.A. § 9543(a)(2)(ii). ***See*** [***Commonwealth v.***] ***Lynch***[, 820 A.2d 728, 732 (Pa. Super. 2003)]. "The

> voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* at 733 (quoting [*Hickman*, 799 A.2d at 141].

> \* \* \*

> *Kersteter*, 877 A.2d at 46[8]–69. Moreover, trial counsel is presumed to be effective. *Commonwealth v. Carter*, [ ] 656 A.2d 463, 465 (Pa. 1995).

*Id.* at 369.

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." *Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa. Super. 2007) (citation omitted). "[T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Rathfon*, 899 A.2d at 370 (citation omitted).

In the instant case, the PCRA court found no merit to this claim and opined:

> By the date of the preliminary hearing, [Appellant] was being represented by Richard H. Milgrub, Esq. ("Milgrub"), whom Evelyn McConnell retained on her grandson's behalf. . . . [Appellant's] victim was S.S., who was the daughter of his paramour, Amber Hill ("Hill").

> Based on [Appellant's] recorded statement admitting to sexual contact with S.S., and Hill's statement that she had witnessed him having sexual contact with her on five or six occasions, the Commonwealth filed seven additional counts of IDSI, along with seven counts each of Corruption of Minors and Indecent Assault with the magisterial district judge. During negotiations, however, the district attorney

offered to withdraw them if [Appellant] would plead to the original charge and accept a sentence of 10-30 years in prison. He also outlined some of the sentences the [c]ourt had previously imposed on similarly situated defendants who lost at trial. [Appellant] was not present at the time, but Milgrub advised him of both the offer and the likely sentencing outcome if he was found guilty by a jury.

Milgrub also apprised [Appellant] of the evidence the Commonwealth would use at trial, including his own confession and Hill's partial corroboration thereof . . . .

[Appellant] had discussed the additional charges with his attorney shortly before the date of his plea and was well aware on December 19, 2012 that pleading guilty to one sex crime meant that he would not be found guilty of twenty-two.

\* \* \*

Having agreed to the plea deal reflected in his written plea colloquy, [Appellant] knew going into the courtroom on March 20, 2013 that he would be receiving a sentence of 10-30 years in prison. As he indicated on the date he entered his guilty plea, moreover, he understood that ten years was the mandatory minimum[7] and that his

---

[7] We note that Appellant was sentenced to a mandatory minimum sentence pursuant to 42 Pa.C.S. § 9718(a)(1), which has been held unconstitutional by **Commonwealth v. Wolfe**, 140 A.3d 651, 663 (Pa. 2016); **see also Alleyne v. United States**, 133 S. Ct. 2151 (2013). Although Appellant did not raise the issue of the legality of his sentence, we can raise it *sua sponte*. **See Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013). Appellant's judgment of sentence became final on April 19, 2013. A judgment is deemed final at the conclusion of direct review or at the expiration of time for seeking review. 42 Pa.C.S. § 9545(b)(1), (3). "[A] constitutional right newly recognized by the Supreme Court of the United States is made retroactive to cases on collateral review only if that court specifically holds it to be retroactively applicable to cases on collateral review." **Commonwealth v. Phillips**, 31 A.3d 317, 320-21 (Pa. Super. 2011). However, "neither our Supreme Court, nor the united States Supreme Court has held that **Alleyne** is to be applied retroactively to cases in which the judgment of sentence had become final." **Commonwealth v.**

J-S78045-16

> negotiated maximum was ten years less than the statutory maximum. He also knew, of course, that he could anticipate a multiplied sentence if the Commonwealth added the other twenty-one counts and proved him guilty at trial.

PCRA Ct. Op. at 1-3, 5. The PCRA court concluded that there was no merit to Appellant's "claim that Milgrub coerced him to plead guilty by making him feel abandoned, particularly when his answer to the district attorney's inquiry about why he failed to indicate as much to the [c]ourt was that he relied on his attorney's advice." *Id.* at 5. We agree there is no merit to this claim.

> At the PCRA hearing, Appellant testified, *inter alia*, as follows:

>> [Counsel for Appellant]: Now, when you pled guilty in front of Judge Foradora on December 19, 2012, we have the transcripts, why did you not bring something up then to Judge Foradora like: Hey, the only reason I'm pleading guilty is because my attorney told me if I don't, he's dropping it?

>> A: Because I was leaning on Milgrub for everything when it came to this case.

N.T. PCRA Hr'g at 14.

> Our review of the record reveals that Appellant was aware of the sentence he would receive upon pleading guilty to one count of IDSI.

---

***Miller***, 102 A.3d 988, 995 (Pa. Super. 2014). Moreover, the Pennsylvania Supreme Court has explicitly held that ***Alleyne*** does not apply retroactively on collateral review. ***Commonwealth v. Washington***, 142 A.3d 810, 820 (Pa. 2016). Therefore, Appellant is not entitled to relief based upon a challenge to the legality of the sentence.

Appellant denied being innocent of the charges. N.T. Guilty Plea Hr'g, 12/19/12, at 5. Appellant did not seek to withdraw his plea prior to sentencing. *See* N.T. Sentencing Hr'g at 4. Appellant did not establish that plea counsel misrepresented the nature of the plea agreement prior to sentencing. ***See Rathfon***, 899 A.2d at 369. Appellant has not demonstrated that he was prejudiced. ***See id.*** Furthermore, a review of the record does not evince the entry of an involuntary or unknowing plea. ***See Moser***, 921 A.2d at 531. Moreover, we find no support for the averment that he would have proceeded to trial were it not for counsel's threat of abandonment. ***Cf. Rathfon***, 899 A.2d at 369-70. Thus, no relief is due on this claim.

Lastly, Appellant claims counsel was ineffective for failing to adequately discuss with him the statement given by Ms. Carolyn A. Simeon to the police on August 6, 2012, as well as the Amber Hill letter. The statement and the letter indicate that the victim's father, Mr. Joey Simeon, coached the victim to tell authorities that Appellant had sexually abused her.

At the PCRA hearing, Appellant testified, *inter alia*, as follows:

> [Counsel for Appellant]: I'm going to show you what I've marked Exhibit A for identification. It purports to be a letter. Can you identify that?
>
> A: Yeah. This is Amber Hill's handwriting.
>
> Q: Are you familiar with her handwriting?
>
> A: Yes, I am.

- 15 -

Q: And do you recall when she wrote that letter?

A: Yeah. I was in Elk County Prison for a failure to appear at court for a Domestic Relations case for child support.

Q: Okay. Would it have been well before the plea and sentence in this case—

A: Oh, yeah, well before that.

Q: —when you received the letter?

A. Well before.

Q: Okay.

A: Before I was even charged.

Q: Okay. Now, this letter, Exhibit A, did that letter ever get into the hands of your attorney?

A: Yes. My grandmother [, Evelyn E. McConnell, ] sent it to him, I believe, at the prelim.

                    *    *    *

Q: And, basically, why do you feel that letter is important?

A: Well, not only does it state that the father of the child tells the child what to say and or do to make an impression upon CYS as to supposed guilt or accusation, but it also pretty much says my innocence.

                    *    *    *

Q: Okay. I'm going to show you what I've marked  as Exhibit B for identification. Do you know that that is?

A: Well, from the looks of it, it is a statement given by Carolyn A. Simeon. And it is referring to Joe Simeon—or Joey Simeon—telling the child what to say, what to do, and that I'm innocent.

Q: Now, who is the author of that statement?

- 16 -

A: Carolyn A. Simeon.

Q: Who is she?

A: Apparently, Joe's aunt.

\* \* \*

Q: I'm going to ask before the district attorney asks you some of these questions. Were you aware that you gave certain statements to the police which could be construed as incriminating statements?

A: Yes, I'm aware.

\* \* \*

Q: And basically, those statements would show that your erect penis had contact with the child victim's mouth; is that correct?

A: Yeah. That statement is correct, yeah.

\* \* \*

[The Commonwealth]: . . . I'm looking at the police report, which I'm now presuming that you've seen. And it says that Amber Hill, your girlfriend and the mother of [the victim] at that time, stated that she had seen you having sexual contact with [the victim] at least five or six times.

A: And I say that never happen [sic].

Q: That's pretty damaging though, isn't it?

A: Yeah. Sounds damaging, yes.

N.T. PCRA Hr'g at 6-9, 14-16. At the PCRA hearing, Appellant testified that he was only charged with one count of IDSI. *Id.* at 11. The Commonwealth stated:

> Your honor, I would ask the [c]ourt to take judicial notice of the Magisterial District Judge 54-3-02, Judge Inzana, at Docket No. 58 of 2012. And I would point out there was one count of IDSI filed at that docket . . . .
>
> I would also ask the [c]ourt to take judicial notice at the same magisterial court, Docket No. 163 of 2012, which shows charges being filed August 15, 2012, the day before that preliminary hearing, against [Appellant], in which seven counts of [IDSI] were filed, seven counts of Corruption of Minors, and seven counts of Indecent Assault Against a Person Less than 13 Years of Age, graded as a felony three. The IDSI's were F1's and the Corruptions were M1.

*Id.* at 38-39. Milgrub replied in the affirmative when the Commonwealth asked the following question: "Do you recall discussions that you had with me in which I agreed that if [Appellant] would enter his plea to one count of IDSI . . . we would forgo the prosecution of these other counts that we believed that we could prove?" *Id.* at 40. The Commonwealth noted that the 21 counts were withdrawn on September 26, 2012. *Id.*

Milgrub testified at the hearing regarding a letter he had written to Appellant's grandmother. *Id.* at 41.

> [The Commonwealth]: . . . [I]n this letter, . . . you refer to the fact that you had a conversation with [Appellant] on the phone prior to the date of this letter, December 13, 2012?
>
> A: Yes.
>
> Q: And then you recite some things that you had told him, and that he was now aware of. The first being the sentence that was being offered. This was December 13th, and I think the record would show the date of the plea was December 15th—

[Appellant's counsel]: December 19th, 2012.

[The Commonwealth]: December 19th. And you talked about what had been offered and what he was looking at. You say in the letter, "I explained to [Appellant] that he made a full confession. I also explained to him that his ex-girlfriend, Amber, also corroborates some of his confessions."

\* \* \*

Q: So you had discussions with him about the strength of the Commonwealth's case?

A: Yes.

\* \* \*

. . . I explained if he went to trial and all these other charges were filed, his life, effectively, would be over, based on the other county sentences that other people received in Jefferson County. . . .

Q: And he accepted that?

A: Yes. He entered the guilty plea and proceeded with sentencing.

*Id.* at 41-43.

Instantly, the PCRA court opined that Appellant

knew for a fact at the time he pled that he was exponentially reducing his sentencing exposure, and the [c]ourt does not believe he would have risked spending the rest of his life in prison on the chance that a jury would have believed Simeon and and Hill over the victim, his own confession, and Hill's partial corroboration of that confession.

PCRA Ct. Op. at 4.

We find the court's credibility determinations are supported by the record; thus, we are bound by them. *See Santiago*, 855 A.2d at 694. Appellant has not demonstrated that but for counsel's errors he would not have pleaded guilty and would have gone to trial. *See Rathfon*, 899 A.2d at 369-70. Appellant has not shown that he entered an involuntary or unknowing plea. *See Moser*, 921 A.2d at 531.

Following our review of the record, we discern no error by the PCRA court. *See Abu-Jamal*, 941 A.2d at 1267. Consequently, we grant counsel's petition to withdraw and affirm the order below. *See id.*; *Widgins*, 29 A.3d at 817-18.

Petition to withdraw granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2017